UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | |
| v. | * | Criminal No. 16-10184-IT |
| | * | |
| BRYAN MORAN, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

May 8, 2018

TALWANI, D.J.

Before the court is Defendant Bryan Moran's Motion for Reconsideration of the Court's Decision on Defendant's Motion to Suppress [#155]. Moran seeks to suppress evidence obtained during a search of bags stored in his sister Alysha Moran's storage unit. For the reasons described below, the court reconsiders its earlier determination, but again denies suppression of the evidence.

**I.     Background**

The relevant background was described in full in the prior order denying the motion to suppress. See Mem. & Order [#114].

**II.    Standard**

The granting of a motion for reconsideration is "an extraordinary remedy which should be used sparingly," appropriate where the movant demonstrates "either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quotation omitted). In reconsidering an interlocutory order, courts "should place great emphasis upon the

'interests of justice.'" United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992) (quoting Greene v. Union Mut. Life Ins. Co., 764 F.2d 19, 23 (1st Cir. 1985)).

**III.     Discussion**

Moran contends first that the court erred in concluding that Alysha's consent authorized a warrantless search of his bags. Def.'s Mot. for Recons. of Ct.'s Decision on Def.'s Mot. to Suppress 2-5 ("Mot. for Recons.") [#155]. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). However, a warrant is not required where officers receive voluntary consent to the search from "either from the individual whose property is searched, or from a third party who possesses common authority over the premises." Id. Common authority arises from "mutual use of the property by persons generally having joint access or control for most purposes," such "that it is reasonable to recognize that [the third party] has the right to permit the inspection in [her] own right and that the other [has] assumed the risk" that the third party would permit the inspection. United States v. Matlock, 415 U.S. 164, 171 n.7 (1974). The First Circuit has noted that, under Matlock, "mere joint access" is not sufficient to give rise to common authority in the absence of "mutual use." United States v. Casey, 825 F.3d 1, 13-14 (1st Cir. 2016) (citing Matlock, 415 U.S. at 171-72).

Moran does not seek reconsideration of Alysha's authority to consent to the search of her storage unit, in which his bags were located. Rather, he argues that Alysha's consent to search the storage unit could not validly extend to the search of his property within the unit.

Courts have varied in their approach to such scenarios. Some courts have held that a third party's valid consent to search the premises extends to the personal property of another on the premises, at least where the property owner did not specifically prohibit the third party from

2

accessing that property. See United States v. Richard, 994 F.2d 244, 250 (5th Cir. 1993); United States v. Davis, 967 F.2d 84, 88 (2d Cir. 1992). More often, however, courts have held that a third party has the right to consent to a search of personal property belonging to another only where the third party has mutual use of that property itself. See United States v. Taylor, 600 F.3d 678, 681-83 (6th Cir. 2010) (consent of a third party who was the sole tenant of apartment insufficient to authorize search of a closed shoebox inside a closet where the closet appeared not be used by the third party and the defendant had closed the shoebox, partially covered it with clothing, and had not granted the third party permission to look inside); United States v. Fultz, 146 F.3d 1102 (9th Cir. 1998) (holding that third party's consent to search garage did not authorize search of cardboard box in the garage, and noting further that a homeless person who stores belongings in cardboard boxes or plastic bags in another's home has the same expectation of privacy that "those who have the money to buy . . . [valises, suitcases, and footlockers]" have in those more expensive containers); United States v. Salinas-Cano, 959 F.2d 861, 866 (10th Cir. 1992) (third party's consent to search home insufficient to authorize search of suitcase where officers knew the suitcase belonged to another and failed to ask if the third party had mutual use of the suitcase). The First Circuit has adopted the majority approach, holding that a third party's valid consent to search a premises "does not necessarily authorize the officers to search closed containers within the [premises]."[1] United States v. Meada, 408 F.3d 14, 22 (1st Cir. 2005) (citing United States v. Karo, 468 U.S. 705, 725 (1984) (O'Connor, J., concurring)); see also United States v. Infante-Ruiz, 13 F.3d 498 (1st Cir. 1994) (a third party's consent to a search of

---

[1] While the government notes that some bags were tied and some bags were untied, the government makes no assertion that the evidence Moran seeks to suppress was found in untied bags. See Opp'n 4 [#169].

3

his vehicle did not authorize a search of a briefcase within the vehicle, where the third party informed the officers that the briefcase belonged to another).

In denying Moran's original Motion to Suppress [#54], the court found that Alysha had actual authority to consent to the search of Moran's bags on two grounds: first, that "at the time of the consent, Moran had already directed Alysha to take control of the bags without caveat or limitation . . . and . . . Alysha alone had access to the bags at that time," and second, that Moran had a "pattern and practice of . . . leaving property with Alysha with anticipation of her not simply safeguarding it, but also accessing it," based on recorded conversations he had with Alysha in November 2015 and March 2016. Mem. & Order 13 [#114].

Relying on United States v. James, 353 F.3d 606 (8th Cir. 2003), and United States v. Basinski, 226 F.3d 829 (7th Cir. 2000), Moran contends that the court erred in finding that Alysha had common authority over his bags. In Basinski, the Seventh Circuit held that a third party "clearly had no actual authority over the contents of [a] briefcase" that defendant had instructed him to destroy, because "[f]or purposes of searches of closed containers, mere possession of the container by a third party does not necessarily give rise to a reasonable belief that the third party has authority to consent to a search of its contents." 226 F.3d at 834. In James, the defendant similarly left property with a third party with instructions to destroy it, but also authorized the third party to open his mail. 353 F.3d at 614. In finding that the third party did not have authority to consent to the search of the property, the Eighth Circuit explained that "[t]he fact that [the third party] opened [the defendant's] mail, on at least one occasion, is of little or no consequence in our analysis" because "[i]n opening the mail, [the third party] was acting pursuant to express authorization," whereas the defendant only told the third party to store the

4

property. Id. "The grant of authority to open the mail does not presuppose a grant of authority to look at the [property]. It is a stretch of logic to read a limited instruction into a broader grant." Id.

Upon further review of the facts (including Alysha's explicit delineation of which things in the storage unit were Moran's) and the case law, the court agrees with Moran that the first ground for finding common authority—that Alysha alone had access to the bags—was not sufficient as a matter of law.

Moran's conversations with Alysha in November 2015 and March 2016 pose a thornier problem. In November 2015, while incarcerated at the Billerica House of Corrections following an arrest, Moran had directed Alysha to "[j]ust go over" to where his possessions were stored "and grab all my stuff. Everything." Evid. Hr'g Ex. 4 at 23 [#108-4]. And, he directed her to access his property in order to supply contraband to two individuals who would "come . . . three, four, five times a day." Id. at 17. Moran nor Alysha appeared to be aware that they were speaking on a recorded line, and neither referred directly to the nature of the contraband. See id. at 13 ("Bry, . . . you're saying way too much shit over the phone like a fuckin idiot. Way too much. I already know. You . . . already told me. . . . I'm not dumb, B. I know what's up. Like, you don't need to say it."). When Moran left a sober house in March 2016, shortly before the search in question, he had again placed all of his belongings with Alysha. In another recorded phone call, after Moran learned that Alysha had received a letter informing her that the fire department would need to access her storage unit, Moran directed Alysha to move his property. When she explained that she had lost the key to the storage unit and didn't know how she could access the unit and move everything in the unit out without help, he told her, "[Y]ou know what the fuck you need to do, like just do it," "you don't need to empty the whole fucking thing" and that "shit's only – only – like right – right – . . . right when you open the door." Evid. Hr'g Ex. 1

at 12-13 [#108-1]. Again, Moran and Alysha appeared to be cautious about what they said over the recorded phone line. See id. at 13 ("I don't want to keep talking about it. This shit's recorded . . . .").

Regardless of whether Moran actually intended to give Alysha authority over his bags, officers may rely on her consent to search the bags if they reasonably believe that he did so intend. See Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) (establishing that a third party has apparent authority consent to search if "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had [actual] authority over the premises" or property). Moran's conversation with Alysha in November 2015, in which Moran directed Alysha to access bags he had left with her on that occasion, would not suffice, without more, to warrant the belief that Alysha had common authority over the bags that he left with her in March 2016. And, taken alone, Moran's conversation with Alysha in March 2016, in which he instructed her to remove specific bags from the storage unit, would not, on its own, establish her common authority over the bags. The court finds, however, that the officers' knowledge of both the November 2015 and March 2016 conversations, in combination, would have warranted an officer of reasonable caution to infer that Alysha knew that the bags contained illicit contraband, and that Moran expected that Alysha would store, move, and access the bags as necessary. Accordingly, the officers were justified in relying on her apparent authority to consent to the search of the bags.

In light of Alysha's apparent authority over the bags, the court need not proceed to the related question of whether Alysha had actual authority of the bags. See Meada, 408 F.3d at 20-

21 (declining to reach the question of actual authority where the third party was found to have apparent authority).[2]

### IV. Conclusion

For the foregoing reasons, the Motion for Reconsideration [#155] is DENIED.

IT IS SO ORDERED.

May 8, 2018

/s/ Indira Talwani
United States District Judge

---

[2] The Motion for Reconsideration [#155] presents the alternative argument that, even if Alysha validly consented to the search of his bags, the consent exception to the Fourth Amendment's warrant requirement should not apply because the police had "ample time to secure the premises and proceed with the warrant process." Mot. for Recons. 8. A warrantless search is lawful if a third party with actual or apparent authority gives voluntary consent to the search. United States v. Bey, 825 F.3d 75, 80 (1st Cir. 2016). As there was apparent authority for Alysha's consent here, the consent exception to the general warrant requirement applies.